## JOSEPH PATRICK BLACK v. STATE.

184 N. W. (2d) 419.

February 19, 1971—No. 42268.

*Richard D. Genty,* for appellant.

*Douglas M. Head,* Attorney General, *James M. Kelley,* Assistant Attorney General, *Charles C. Johnson,* Fifth District Prosecutor, and *James C. Harten,* County Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Kelly, Frank T. Gallagher, and Rosengren, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order denying postconviction relief issued as a result of petitioner's application therefor initiated almost 7 years after his conviction upon a plea of guilty to third-degree murder, a lesser degree of the crime for which he was indicted. We affirm the order of the postconviction court.

Petitioner, aged 31 on January 29, 1962, the date on which the indictment alleged he caused the death by shooting of Marvin Wendt, was employed in Mankato, Minnesota, as a laborer. He is the father of four children but he had been divorced from his wife, who had custody of the children. During the 10 years preceding the incident giving rise to the indictment, petitioner was acquainted with the deceased, Marvin Wendt, and his wife, Mary Jane, and resided in a house trailer on the Wendts' property. For some time prior to 1962, petitioner had been having an affair with Mrs. Wendt, with whom he admittedly had frequent sexual relations, and was, with her encouragement, urging **marriage if**

she would divorce her husband. Wendt, however, was adamantly opposed to a divorce and the situation precariously continued. There was evidence that Wendt, who was given to excessive drinking, at times treated his wife and children brutally, which petitioner resented.

During the night preceding the shooting, petitioner was at his place of employment where, in the early morning hours, he received three telephone calls from Mrs. Wendt. She had been out drinking with her husband and was trying to learn where petitioner had hidden a bottle of whiskey. Upon petitioner's refusal to divulge the hiding place, Mr. and Mrs. Wendt carried out a threat to ransack his trailer and disconnect his electricity. Petitioner left work early that morning, returned home, found his trailer home in a "mess," and drank the whiskey the Wendts had sought to find.

Apparently angered by the foregoing events, petitioner impulsively decided to "get even with" Marvin Wendt. At about 7 a. m. on January 29, he took his "over and under" .410 shotgun and walked some 75 feet to the Wendts' residence. The facts recited by defense counsel at the time the guilty plea was tendered and accepted acknowledged, with petitioner's full acquiescence, that he intentionally pointed and fired the gun into the Wendts' first floor bedroom window, although arguably without intent to do bodily harm to anyone.[1] However, in conflict with this preplea admission, at the postconviction hearing petitioner testified that the gun accidentally discharged into the bedroom window while he was on his way to damage Wendt's automobile and pumphouse. This conflict in testimony was resolved against petitioner by the postconviction court. In any event, Mr. and Mrs. Wendt at that time were in their bed, which was situated beside

---

[1] Although petitioner could read print larger than newspaper type with some difficulty and had normal peripheral vision, he was legally blind at the time of the incident according to medical authorities. Thus, he was apparently unable to see clearly into the house and presumably could not discern whether anyone was in the line of fire.

the window. Marvin Wendt was killed by a shotgun blast in the chest as a result of the shot fired from petitioner's gun. After the shooting, petitioner hid the gun in a snowbank and returned to his trailer.

About 7:30 a. m. the same day, petitioner was arrested and on February 27 was charged by indictment with first-degree murder. Counsel was appointed on January 30. On March 8 he moved to quash the indictment on the ground that it was based on illegally seized evidence and, with unusual foresight and ingenuity, moved in the alternative to suppress certain evidence obtained at or near the time of the arrest, including some boots which matched footprints in the snow near the Wendts' bedroom window, the .410 shotgun, a ring, and a statement in the nature of a confession which petitioner had given to the city police.[2] Consistent with common practice prevailing at that time, the trial court denied the motions but indicated that the proper time to raise questions concerning the admissibility of the evidence was during the course of the trial. Following that denial, the arraignment continued and petitioner entered a plea of not guilty to the indictment.

On May 21, he made written and oral application to plead guilty to third-degree murder, a lesser degree of the crime charged. The tender of his plea was accompanied by a detailed and comprehensive written and oral recital by defense counsel of the factual and legal basis supporting the application. Included were written medical reports of the results of psychiatric and ocular examinations of petitioner obtained by defense counsel in preparation for trial. Unlike present-day procedure, petitioner was not addressed personally by the court or called upon to testify to ensure that he fully understood his rights, the nature of the reduced charge, and the consequences of his plea; that the

---

[2] Procedures for pretrial suppression of evidence were established much later in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3.

plea was voluntarily and freely made; and that a factual basis therefor existed.[3] Rather, in petitioner's presence and with his acquiescence, his counsel presented assurances of the existence of the foregoing requirements in open court, together with the facts surrounding the incident giving rise to the charge, including petitioner's admissions. His counsel also presented arguments supporting petitioner's written application to plead guilty to the lesser charge, and the prosecution filed a written recommendation that the change of plea be allowed. The change was permitted and petitioner's guilty plea was accepted. He was adjudged guilty and sentenced to imprisonment for an indeterminate term of 30 years. On December 3, 1968, he filed a pro se petition for postconviction relief. Thereafter, he retained counsel, who filed an amended petition and a second amended petition. A plenary evidentiary hearing was held on March 31 and April 25, 1969, and on October 3, after thorough consideration of the evidence and petitioner's claims, the lower court denied any relief.

The main issues tried by the postconviction court were whether petitioner voluntarily and understandingly entered a guilty plea to third-degree murder and whether there was a factual basis for the court's acceptance of the plea. The findings of the postconviction court specifically and affirmatively answer these questions. On appeal to this court, petitioner also raises constitutional questions concerning his arrest, the alleged confession, and the seizure of evidence. While the postconviction court made no specific findings concerning these claims except that the statements made to police were not freely and voluntarily given,[4] the record fails to sustain petitioner's claims that

---

[3] A. B. A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968) §§ 1.4, 1.5, and 1.6.

[4] This finding was presumably based on the fact that oral and written statements were obtained before petitioner was afforded counsel. Petitioner at the postconviction hearing admitted that no threats or

his conviction upon his plea is constitutionally defective. If petitioner had established that he was illegally arrested, that inculpatory evidence was illegally seized, and that the threatened use of such evidence or of his involuntary confession induced his plea, he would be entitled to relief. However, the burden of establishing at least a prima facie case in a postconviction collateral attack is on petitioner. Minn. St. 590.04, subd. 3; Cable v. State, 284 Minn. 89, 169 N. W. (2d) 391; State ex rel. Turner v. Tahash, 279 Minn. 359, 156 N. W. (2d) 904. The record in this case would uphold a finding by the postconviction court that petitioner did not sustain the burden of proving absence of probable cause for his arrest or illegal seizure of evidence. Furthermore, and most important, there is no evidence that either the alleged confession or the state's possession of evidence seized at the time of arrest induced petitioner's plea of guilty. Such inducement for the plea must be established before claims of an involuntary confession and illegal seizure of evidence can have any constitutional significance. State ex rel. Turner v. Tahash, *supra;* State ex rel. Drysdale v. Tahash, 278 Minn. 361, 154 N. W. (2d) 691.

On the contrary, the evidence clearly supports the postconviction court's findings and determination that petitioner's plea of guilty was knowingly, understandingly, and voluntarily made, and that the facts before the trial court were sufficient to justify acceptance of the plea to the reduced charge. The record of the proceeding leading to petitioner's conviction demonstrates with unusual clarity that defense counsel zealously, with exemplary professional skill and ingenuity, afforded petitioner every protection of his fundamental and statutory rights throughout every stage of the proceedings. He spent over 150 hours representing petitioner and took special pains to make as certain as is humanly possible that before petitioner tendered his plea of guilty he not

---

promises induced his plea. But see Johnson v. State of New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882, holding that the requirements of "Miranda" and "Escobedo" were not retroactive.

only understood the nature of the reduced charge and the possible consequences of his plea but that he had a full understanding of his fundamental rights, including his right to rechallenge at trial the validity of his arrest and the admissibility of the evidence then seized and his statement to the police. Furthermore, the detailed statement made by defense counsel at the time the plea was offered establishes without any doubt a factual basis for petitioner's guilty plea. After reciting a number of *facts* which he conceded would support an indictment for *first-degree murder,* counsel noted that petitioner had consistently maintained to him that he did not hate Marvin Wendt and would not intentionally kill or physically harm him, a claim supported by the results of the psychiatric examination by the Mayo Clinic submitted to the court. This, counsel said, "is not inconsistent" with petitioner's statement that he fired into the window to get even with Marvin. The undisputed facts and petitioner's admissions made through his counsel and approved by his voluntary plea of guilty adequately establish that he caused the death of the victim "by act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual" in violation of Minn. St. 1961, § 619.10.[5] The practice of permitting defense counsel to make the admissions rather than petitioner personally, although now disapproved, was common in 1962, and absent a prima facie showing of a denial of fundamental rights, the fact that the procedure did not conform to present-day standards does not entitle petitioner to relief. Cable v. State, *supra;* Langer v. State, 287 Minn. 320, 178 N. W. (2d) 628; McMillen v. State, 289 Minn. 40, 182 N. W. (2d) 845. Since there is ample evidence to support the findings of the postconviction court and no constitutional deficiencies affecting petitioner's rights have been established, the order denying relief must be upheld.

Affirmed.

---

[5] Now Minn. St. 609.195.